Please all rise. Here he is. Honorable appellate court for the second judicial district is now open. The Honorable Christopher Henry Kennedy presiding. Good morning. Please be seated. Your Honor, the only case we've got this morning is 2-24-0536. Gregory J. Smith, a beneficiary of the estate of Johnny Smith, deceased. Plaintiff appellant v. Margaret Connor, as executive of the estate of Johnny Smith, deceased. Defendant's appellee. Arguing on behalf of the appellant, Mr. Myles R. Harris. Arguing on behalf of the appellee, Mr. Samuel J. Hart. All right, Mr. Carroll, you may begin when ready. Please feel free to adjust the microphone so that we can hear and see you. Go ahead. Good morning, Your Honors. Good morning. May it please the court, counsel, my name is Myles Carroll and I represent the plaintiff appellant, Greg Smith. On August 14, 2024, the trial court dismissed plaintiff's amended complaint against Margaret Connor with prejudice under Section 2-619 after determining that plaintiff's claims against the defendant constituted claims against their father, John Edward Smith's estate and were therefore barred under Section 18-12B of the Probate Act for being filed more than two years after John's death. The ultimate issue before the court today is whether plaintiff's claims against Margaret are subject to the Probate Act's two-year limitation for bringing claims against an estate. All right, Mr. Carroll, what is your ultimate goal or your client's ultimate goal in bringing this litigation? Your Honor, my client seeks recovery directly from Ms. Connor for her actions committed in her capacity as the executor. Recovery of what? Recovery of funds and, I guess, of assets and any damages that, and lost opportunity, lost legal opportunity for what was ultimately concealed from my client by the executor who owed my client a fiduciary obligation. All right, was there an estate ever filed in this particular case? No, there was not, Your Honor. All right, and was there, the will was filed though? Yes, the will was filed, but the executor, despite request for information by the plaintiff, Greg Smith, never provided that information and, in fact, led my client to believe that there were no probate proceedings in a letter dated as recently as April, I believe, 17 of 2023. Well, there were no probate proceedings. You just told me that. That's correct, Your Honor. So why would she have to tell you that there were? Well, because her actions after the fact indicated to my client and suggested that these assets that ultimately were not assets of the estate were, in fact, assets of the estate. So, in other words, she was representing and telling my client all along that this is the state of the estate. Here's what's going to be distributed. But when, in reality, those assets were, in fact, held in accounts where the defendant was a joint tenant of those accounts. Your complaint does not allege any sort of bad actions on behalf of Ms. Conner concerning those accounts, does it? No, it doesn't. Okay. So how, if they didn't belong, if they weren't out there in the open as part of the estate, why should there have been an estate and why should your client have been informed? Well, my client should have been informed because the intent of the testator, their father, and the executor's duty was to carry out the terms of the will. And as the executor, Ms. Conner owed my client a fiduciary duty to do so. Well, she didn't have anything to give away, according to a review of the record, because it was all in joint tenancy or the trust. Right. And that's correct, Your Honor. But as, you know, as set forth in Ms. Conner's 191B deposition testimony and her affidavit, one of the accounts, the UC Money Market account, was amended merely four or five days after John had suffered a debilitating stroke and was on a do-not-resuscitate order. And that money was ultimately, so Ms. Conner, five days after John suffers this stroke, signs this agreement naming herself as a joint tenant with right of survivorship merely five days after and effectively, so the effect of which was that she had disinherited the beneficiaries of the will. Well, she had been power of attorney for some time, hadn't she? That's correct, Your Honor. Because she was paying these bills and helping take care of him? Yes, she was helping take care of him. All right. But you're still not alleging any inappropriate conduct on her part concerning that account for five days after the debilitating stroke, are you? No, Your Honor, because that was not revealed or discovered until Plainer defendant filed her motion to dismiss on March 1st of 2024. You didn't file a motion to amend at that time? We did, Your Honor, and I believe our amended complaint was filed while we were anticipating receipt of the transcript. But no, an amended complaint was not filed to that effect. All right. One of the issues you raised in your brief was that she had an obligation to notify the potential heirs that the will was filed. Do you have any authority for that? Well, Your Honor, that derives from the duty that Margaret owed a full disclosure. And so despite the fact that the beneficiaries, including the plaintiff, were requesting this information, not only was that information not provided, but the defendant essentially concealed and misrepresented facts that would have allowed and permitted my client to, I guess, contest her actions. But since this significant amount of time passed, that right was effectively stripped and ultimately weaponized against my client. Did your client visit Champaign regularly to visit with his father? I don't believe he visited him regularly, but I don't. And I also don't believe that's in the record, Your Honor. I don't think it is. All right. So now there's no property, at least on paper, to put into an estate. But what does she try to do then to accomplish what might have been the testator's will? And so this was part of why we are alleging that this is a breach of fiduciary duty because when the letter was sent by Ms. Conner's attorney in April of 2023, it led my client as he testified or attested via his affidavit, it gave him the false impression that there were no probate proceedings because, well, that's true, there were not. But it still, I guess the point being that by not revealing and by not informing my client of this, the fact that there were no assets, he was in fact deprived of an opportunity to contest his actions within two years of the death of the decedent. But that still does not change the fact that these claims that my client brings are not claims against the estate because they seek redress for actions committed by Ms. Conner personally after the decedent's death. There were other heirs that he could have consulted, correct? That's correct. And they ultimately, I believe, agreed to take the distribution that was consistent? I do not believe that any of the heirs signed the distribution agreement. My client did testify or attested via his affidavit that, to his knowledge, none of the heirs signed the agreement forwarded by J. Stephen Beckett in April of 2023. Well, I know the record indicates he didn't, but can you tell me the pages in the record that indicate that the others didn't? I don't believe it's in the record that indicates that they did not. I guess, well, maybe they received the money, but not that they necessarily deposited the money. I do not have that information. Not that they necessarily what? Received or deposited the money. They had received the checks. There's no dispute that the checks were, in fact, mailed from Ms. Conner or Ms. Conner's agent to the heirs. But, again, to my client's knowledge, none of the funds were physically deposited following the, I guess, receipt of the checks. Well, it sounds like you're saying her, what you perceive as, well, you said she lulled him into violating the statute. But is that really fair? Because he knew when his father died, true? And then the statute's on the books. So there's no secret there. Two years is going by. I'm not sure it would make any difference, because you don't cite a case that says, in probate, if the executor lulls a potential heir or devisee or what have you, claimant to the estate, lulls them into a false sense of security, then the two-year jurisdictional deadline doesn't apply. You don't cite any case like that, so I don't know whether it would matter. But in the end, you seem to be describing sort of there was anxiety, he wondered, he felt confused, powerless, all of these things. I mean, what would the damages be? The damages would be, for instance, Emotional distress. Well, for lost chance damages because Lost chance of damages for what? Well, because he was deprived of Given that she's offered everything that was jointly titled as, you know, essentially a gift, what would the damages be? How would they be in any way different than what he would have taken as an heir? I'm confused. Because what he would have taken as an heir and what was alleged in the complaint is that in her capacity or purported capacity as an executor or de facto representative, she had incurred and advised the heirs that she had incurred attorney's fees. But the fees would have been able to be paid out of the estate anyway. Right. Nobody expects that the executor is going to pay legal fees that are necessary to close out a probate estate, which this wasn't. So, again, how is he in any way damaged, not that we even need to get there, but I'm confused about the whole, what the controversy is here. Right. So the damages, the funds which were spent on attorney's fees, which my client has alleged were not incurred in connection with the exit, with the settlement of the probate estate or related to fulfilling her duties as the executor of the estate. So there's something about the $5,000 bill that makes me think somehow it would have been better had there been probate assets, which I think you admit there were not. Right. So had this actually been dealt with in probate and during probate proceedings? If there are no probate assets, then how does it get dealt with in probate? Ultimately, there's this sort of common sense, maybe not legal question, is why would the fees have been any different in probate? My experience is it's not a place where the fees are much discounted. The fees that were incurred for what was a relatively simple settlement of estate were grossly disproportionate to what my client believed was actually necessary. What is it in the record that establishes that the fees were in any way excessive? My client's affidavit, and I believe his, so we didn't cite to any case law because we have no idea what those fees were actually spent on because the executor and his attorney would not provide that information to my client despite multiple requests. And that's why the Smith Heirs and Distribution Agreement that we submitted. So they believe that the fees would have been less had it been a probate estate. And not only that, but we're not. Would you believe that? Yes. It would have been less than $5,000? Yes. I'm not only. Thank you, counsel. Yes. And so, Your Honors, one of the issues that, you know, that's, I think one of the central issues is that to even be allowed as a claim against the estate of a decedent, it must be based upon the absolute liability of the decedent. So presumably, had plaintiff brought this claim within two years directly against his father's estate, it would have been improper because it wasn't predicated upon liability of the estate or John's liability prior to his death. But conversely, a claim which wholly accrues during the period of administration is a personal liability of the administrator and would not be barred by the applicable statute of limitations, or I'm sorry, the jurisdictional statute relevant to filing claims against the estate. And so since plaintiff's claims accrued and were discovered wholly during this period of distribution or administration, they are a personal liability of the executor's, Margaret Conner. But she has nothing to, for lack of a better term, execute her. There was no property for her to distribute in an estate. Right. And that's why, and I believe this was raised in our argument, and it was raised in the lower court, which that further evidences her breach of fiduciary duty because her, you know, assuming she never makes that gift and all of this money was transferred to herself as the sole beneficiary following their father's death and nothing passed in probate, that runs directly contrary to the will, to the intent of the testator. And it was Margaret's duty to fulfill, you know, to fulfill her father's wishes. All right. Well, maybe this is the issue. Do you have any authority that indicates that if the property is transferred during the life, however that life is, whether it's a healthy life or a life subject to a power of attorney already, that somebody has to actually go in and say that will no longer exist? Is there that authority? I'm not sure I understand your question, Your Honor. Well, if there's no property available and the will is now, cannot be executed per se because there's nothing there, is there some authority that you have that says that it must be executed even though there's nothing in that estate to put into a probate estate? I am not aware of any authority, Your Honor. Well, then why are we here? Your Honor, because like I stated from the beginning is that my client does seek redress from defendant personally because, you know, as defendant argued in her appellate brief, and I believe in her reply brief in the lower court, is that, you know, one of the concepts that was raised was fraudulent transfer. Fraudulent transfer because four days after John Smith was, you know, debilitated, that all of, you know, the remainder of his money that was supposed to pass to the heirs was, in fact, transferred to the defendant as a sole beneficiary. And so the presumption of fraud arose. However, these facts were never revealed and were never revealed to anybody until March 1st of 2024. And, in fact, as, you know, as I've stated previously, the defendant led my client to believe all along these were, in fact, estate assets, so thereby depriving him of an opportunity to address these issues before a probate court. You can wrap up. Your Honor, I guess I withdraw the remaining issues. I'm standing on my brief, and I will address anything further in rebuttal. I just ask that this court reverse the trial court's decision. Thank you. Thank you, counsel. Mr. Howard, you may proceed when ready. Please adjust the microphone as needed. Good morning, Your Honors. May it please the Court, my name is Sam Herod. I'm counsel for the defendant, Margaret Conner, the sister of the plaintiff, Greg Smith. It's important to keep in mind here that plaintiff has only partially appealed the trial court's ruling. Plaintiff did not appeal the dismissal of Count 1, which sought a declaration that Ms. Conner, as executor, had misappropriated estate assets and should be removed as executor, and that plaintiff should be appointed as executor. Plaintiff did not appeal the trial court's dismissal of Count 3, which sought to compel Mrs. Conner to provide an accounting for her activities as executor. And then for the first time in Section 4 of his reply brief, plaintiff states that he did not appeal Counts 1 and 3 because the trial court ruled that there was no estate. And plaintiff has not challenged that ruling on appeal here, but has instead accepted it. Instead, plaintiff has only appealed the trial court's ruling in Count 2 that is claimed for breach of fiduciary duty against Mrs. Conner in her capacity as executor of the estate of John Smith was barred by the Probate Act's two-year nonclaim statute, 1812B. The primary allegation of all the counts of the complaint is that Mrs. Conner allegedly acted inappropriately as executor of the estate of John Smith. In this appeal, plaintiff is casting about trying to salvage some portion of his claim from the trial court's dismissal. The problem for plaintiff is that his complaint and its allegations are all of a piece. The allegations of each count are incorporated into the following count, such that the trial court's dismissal of one count applies equally to all the counts. And plaintiff's failure to appeal the dismissals of counts 1 and 3 and his decision to accept the trial court's ruling that there are no estate assets is fatal to his appeal here. It's akin to a car owner taking out the passenger seat of a car, junking the car, and expecting to be able to drive the passenger seat to work. The passenger seat cannot drive itself, and neither can plaintiff's breach of fiduciary duty claim survive by itself on appeal. The question here is whether plaintiff's breach of fiduciary duty claim against Mrs. Conner, again, in her capacity as executor of the estate, is a claim against the estate and is thus subject to the Probate Act's two-year non-claim statute. Counsel, are you aware of any statutory authority or common law authority that indicates that in the absence of assets to be put into an estate, there has to be an estate anyway? I am unaware of that. And I think the trial court ruled that there didn't need to be an estate. There was no estate. A probate only needs to be opened, I think, as I cited in the statute. Someone should file one, and absent filing, if a court determines that there should be one filed, the court can order that an estate be opened. That never happened. Could the court have ordered it even after the two-year period in this case? I don't believe so. I think any claims, that is a non-claim statute. It is not a statute of limitations. The Supreme Court in Vaughan said that it imposes additional time constraints for making claims, and it preempts statute of limitations with longer periods of time. I think the Rozicki case also held that a separate action by an heir of an estate that seeks damages from an individual for taking assets that should have been estate assets is also barred by 1812b. The problem for plaintiff is twofold. First, as the court in Rozicki held, 1812b bars these types of claims if they are brought more than two years after the death of the decedent, which is the case here. It was more than two years afterwards. And as the court has noted, plaintiff has cited no cases which hold that a breach of fiduciary duty claim brought by an heir against an executor is carved out from the two-year non-bar claim, the non-claim bar of Section 1812b. Can I just interrupt? Is there any fiduciary duty? I was just about to get to that. Thank you, Justice Muller. I don't think that was the basis for the trial court ruling, as I understand it. I don't believe so either, but counsel has said that the judge's ruling was that there was no estate assets. There were no estate assets, and he hasn't appealed that. So essentially he's pleaded himself out of a claim because his assertion in count two is that Mrs. Connor, as executor, owed a fiduciary duty to plaintiff as an heir of the estate to properly administer the estate. And Mrs. Connor breached that duty by misappropriating and failing to administer the assets of the estate. Once the plaintiff accepted the trial court's ruling that there were no estate assets, he has defeated his own appeal. There are no estate assets. There is no estate to administer. And plaintiff has no claims that Mrs. Connor breached her fiduciary duty as the executor of the nonexistent estate to administer nonexistent assets of the estate. Well, counsel, are you saying that without a probate case being filed, an executor has no duties? No, I'm not saying that. But there is no allegation here. There is an admission by the plaintiff here that there were no assets and that his allegation is specifically that those claims were, those assets were misappropriated or misadministered by my client. That's what his claim is. What he really has now, I think, by not appealing the trial court's ruling and accepting the ruling that there were no estate assets, maybe he has a fraudulent conveyance claim that my client, after the fact, fraudulently conveyed these assets to herself. But as in the Rozicki case, that's barred by 1812B. And I also pointed out in my response brief that Section 4A.10 of the Probate Act was amended in 2015 to provide that any fraudulent conveyance claims by a caregiver, which in this instance my client was with the power of attorney, must also be brought within two years of the death of the decedent. So I think for these reasons, this court should affirm the ruling. So a quick question about Rozicki. That was a creditor. It was the plaintiff, right? It was the ex-wife, but she was essentially a creditor of the estate. Correct. And there was an estate that had been opened, right? There was a probate proceeding that she could have filed in. Does that not distinguish? I mean, it's not on all fours with our situation here, but I think the position is the same. It is a tort claim brought outside the Probate Act against someone seeking to bring those assets back in. Here, the plaintiff no longer has a claim that my client acted as the fiduciary, so it really is only a breach of fiduciary. Well, it's not a breach of fiduciary duty claim, but he's claiming he has some kind of tort claim that my client took assets that should belong. So in that sense, I think it is the same as Rozicki. So, yeah, I think, I mean, their argument is essentially that the cause of action is against the defendant or capacity as executor is, I think is the summary, and thus the payment of damages would be by her personally. Correct. As opposed to a claim against the estate they're arguing involves estate assets. Correct. But I think the Rozicki case holds that that sort of claim against an individual, claiming that there should be assets that should have been in the estate, and I'm entitled to damages. When Rozicki, the creditor, brought an individual separate claim against that individual seeking damages, I think it's the same. And here, there just are no assets that should have been to be administered, so I don't know what the dispute is over at this point. What about the allegation that essentially seems to be akin to the discovery rule that the fraud concealed the potential cause of action beyond the date of the statute? I cited another case, and I unfortunately left my own response brief at home this morning when I came. I cited a case in my plea that discussed a case where the individual said, well, they were unaware that the claim existed, and the court held that this is a non-bar statute. There is no extension of time for failure to have knowledge. So I think that addresses your question, Justice Kennedy. All right, thank you. Thank you. Thank you. Mr. Carroll, you may begin your rebuttal when ready. May I proceed? Please. So the counsel in his argument addresses the fact that the plaintiff did not appeal counts one and three. But this signifies that the trial court's ruling was an error, because by ruling that there was no estate, it seems illogical to conclude that plaintiff's claims against the defendant are, in fact, claims against the estate or the estate's inventory and assets based upon the absolute liability of the decedent. In fact, virtually every single case cited by the defendant, both in the lower court and on appeal, involved claims involving a probate estate that was opened, claims against the decedent, either known or unknown at the time, either they were contingent or based upon an absolute liability for something occurring prior to the decedent's death, or they were in action for inventoried assets of the estate. And so the Roziski case that was cited by the defendant for the support that the fraudulent transfer, to ultimately conclude that plaintiff's claims are akin to that, the decedent in that matter participated and perpetuated the fraud by transferring assets that he was precluded or enjoined from transferring prior to his death. Another key distinction in that matter is the fact that there was a probate estate that was opened, and the administrator in that case, in fact, sued the defendant, who was the recipient of the fraudulently gained funds, and that matter settled. The petitioner attempted to vacate that order. That was denied, and then she subsequently filed a lawsuit against the defendant, and that's why it was barred, because she had the opportunity to raise that in the probate proceedings. The authority cited by both sides in this case that the trial court agreed with just demonstrates why this is not a claim against the estate. For example, in Ray Estate of Topol, that's the claim where the bank was unaware of its claim against the decedent, was because it was a claim to foreclose a property based on a mortgage held by the decedent before his death. And since the mortgage was secured by a property that was a part of the estate, that was a personal liability of the decedent's. For example, in Pauley v. Estate of Pauley, another case that presumably the trial court relied upon, this was a widow's claim against her husband's estate and her husband's daughter from a prior marriage to recover 100 percent of the decedent's earnings. That is undoubtedly a claim against the estate based solely on the fact that the estate was sued directly. And for the McDonald case, for example, where this court held that the petitioner's putative spouse claim wherein she claimed that she was entitled to the entirety of the decedent's estate was a claim against the estate because it was seeking money directly from the estate. That is simply not the case here because, as the trial court ruled, there are no assets. There are no assets because of the executor's breach of fiduciary duty. But doesn't the fact that these are claimed-to-be assets of the estate, doesn't that still bring it within the ambit of a claim against the estate? I do not believe so, Your Honor, because as the case law dictates, it must be based upon the absolute liability of the decedent. Greg isn't suing his dad. He's not suing his dad's estate. He doesn't claim to be his dad's creditor, and he doesn't claim that his dad owes him any money. And so solely based on the issue of whether his claim for breach of fiduciary duty constitutes a claim against the estate, since there is no liability on his father's behalf, the answer to that question, in our opinion, has to be no. And conversely, as we indicated and we cited in the Perlman, Thurber, and Mackey decisions, and the estate of Wagler decision, that a claim which wholly accrues during the period of administration is a personal liability of the estate, and therefore it's not subject to the claim statute. May I ask, though, the same question that I ask of counsel, is if we assume that the decedent, whatever he holds or she, is held in joint tenancy, then would his heirs have the same sort of claim against the joint tenant, the surviving joint tenant? I believe so, Your Honor, yes. Tell me about that. How would that work? Where does the duty come from? The duty comes from the idea that he has heirs who are getting nothing. And so therefore, every, we could just say widow, every widow then has a fiduciary duty to whoever the heirs might be. Even if there's nothing in the estate. So if that widow is the executor and the beneficiaries... Even if there's nothing in the probate estate. But that's, yes, Your Honor, I understand where you're getting at, but the concern is that the only reason why there wasn't anything in the estate is because of the defendant's misrepresentations and her subsequent concealment because she's sending e-mails to the beneficiary saying, here's the state of the estate. And she sent that several months after John's death. Several months after that, she sends an e-mail saying, you know, the stress and burden of being the executor is becoming too much to handle. And that wasn't verbatim in the e-mail, but clarified during her deposition. But again, the date of the death is clear to everyone. The two-year statute is clear. If there was an issue or problem, I mean, I see that as a little bit separate than my question, but if there was an issue or problem, then it's clear people can't slumber on their rights. Right. And so the fact that no one knew that there was an issue or a problem because they were relying on their fiduciary. The example I would use is if you have an accountant, you're trusting your accountant to do his or her job. You're not hiring a different accountant to check his or her work. The plaintiff in this case and the beneficiaries, because they were owed a fiduciary obligation, had no further duty. They had a right to trust Ms. Conner in this instance, and they did so to their detriment. And so unless the panel has any further questions. Again, I'm following up on something that Judge Mullins asked before. You brought a lawsuit. You're saying there are damages. You're positive there are damages. And the only thing that we see in the record is $4,479.50 and $580 for attorney's fees that the estate, if there had been one, could have incurred. What damages are you looking for? Well, what my client was entitled to receive but for the, what we titled nefarious conduct and the misconduct. I believe that was your question earlier, which was, well, my client lost a legal right. I believe this defendant argued in his response brief was that the fraudulent transfer. Since this, by signing the joint tenant, the agreement to make Margaret a joint tenant, to no one else's knowledge, and then concealed the fact, that completely stripped the parties, or I'm sorry, the heirs and beneficiaries of a legal right to pursue that claim based on if the presumption of fraud arising because John was incapacitated when that agreement was signed. But you didn't actually plead that that was a problem in your complaint, even in your amended complaint. You say misappropriated funds, but you don't say how they were misappropriated. Don't you need to put the other party on some notice about what you're alleging? Yes, Your Honor, that was not addressed or pledged specifically within the complaint, but in the briefing on the motion to dismiss, which the court was able to, the lower court, I apologize, was reviewing all exhibits and supporting pleadings that were attached and was supposed to view those in the light most favorable to the non-mover. That did not happen. Did you make a motion after that argument to amend the pleadings to comply with the affidavits and proofs that had already been submitted? That had not been filed, Your Honor, no. Okay. All right. I don't have anything else. Thank you. No, thank you. All right, thank you, counsel. We will take the case under advisement, issue a disposition in due course, and we adjourn for the day. Case all rise.